UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HUGH A. TAYLOR** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-301** |
| **LOUISIANA INSURANCE GUARANTY ASSOCIATION, ET AL.** | **SECTION "B"(1)** |

## ORDER AND REASONS

Before the Court are defendant Exxon Mobil Corporation ("Exxon")'s notice of removal (Rec. Doc. 1), plaintiff Hugh A. Taylor's motion to remand (Rec. Doc. 29), Exxon's memorandum in opposition (Rec. Doc. 40), and plaintiff's reply in support of his motion (Rec. Doc. 47).

For the following reasons,

**IT IS ORDERED** that the motion to remand (Rec. Doc. 29) is **GRANTED**. The Clerk of Court is directed to return this case to the Civil District Court for the Parish of Orleans.

## I. FACTS AND PROCEDURAL HISTORY

From approximately 1960 to 2011, plaintiff Hugh A. Taylor was allegedly exposed to asbestos when he worked at various facilities, including Exxon, Shell Oil & Chemical, Marathon, Mobil Oil, Tenneco, Texaco, Triad, Union Carbide, Hooker Chemical, Allied Chemical, Michoud, Nine Mile, and Little Gypsy. Rec. Doc. 1-1 at 4-5, 26-27; Rec. Doc. 40-1 at 3-5, 9, 11-13, 15-18. At these facilities, plaintiff worked with and around other workers handling asbestos products, and also handled these products

1

himself, including the "Garlock 900 asbestos gaskets." Rec. Doc. 1-1 at 27; Rec. Doc. 29-1 at 3. Specifically, when asked how he was exposed to asbestos working in plants, plaintiff testified that he was exposed by the way he worked. Rec. Doc. 40-1 at 2. He had to "scrape the gaskets off, clean the area up with a wire wheel, and make a new one." *Id.*

Plaintiff testified that in addition to his work on land, beginning in the 1980s until he retired, he worked on "many platforms," including platforms in the Gulf of México. Rec. Doc. 40-2 at 24, 26, 33. Some of these platforms were "100 miles offshore." *Id.* at 35. On these platforms, he also worked on the removal and replacement of gaskets for compressors. *Id.* at 34. Plaintiff stated the gaskets were "usually not Garlock" and that his work on offshore platforms in the Gulf of Mexico "did not" involve removal and replacement of Garlock 900 gaskets. *Id.*; Rec. Doc. 47-1 at 2. Plaintiff knew when a gasket was the Garlock 900 brand because the name was "stamped on it." Rec. Doc. 40-2 at 22. When asked whether he believed he was exposed to asbestos while working on the compressors on the platforms, plaintiff replied that he "wasn't exposed to no asbestos at all offshore." *Id.* at 31. On April 22, 2021, plaintiff was diagnosed with asbestosis and "other ill health effects," which he attributes to his occupational exposure to asbestos. Rec. Doc. 1-1 at 4.

On July 23, 2021, plaintiff filed suit in state court alleging negligence, fraud, product liability, and tort liability related to asbestos exposure. Rec. Doc. 1-1 at 4. On January 10-11, 2022, defendants deposed plaintiff. *Id.* Exxon filed a notice of removal on February 9, 2022. Rec. Doc. 1. Plaintiff subsequently filed the instant motion to remand (Rec. Doc. 29) and Exxon responded shortly thereafter (Rec. Doc. 40).

## II. LAW AND ANALYSIS

### A. Removal Based on Federal Question Jurisdiction

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "To determine whether jurisdiction is present for removal, [courts] consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). When a removing party claims federal question jurisdiction under 28 U.S.C. §§ 1331 or 1441, that party must show that the civil action "aris[es] under the Constitution, laws, or treaties of the United States." *See Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020) (citing 28 U.S.C. § 1331). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of

remand." *Manguno*, 276 F.3d at 723. The removing party bears the burden of proving that federal jurisdiction exists, and therefore, that removal was proper. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

"[T]he presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Meaning, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.*, 482 U.S. at 392. This rule places the plaintiff in control of whether a case can be removed and ensures that removal is prohibited for federal claims the plaintiff merely *could have* brought or for a federal defense the defendant intends to raise. *See Rivet*, 522 U.S. at 475 ("A defense is not part of a plaintiff's properly pleaded statement of his or her claim."). Furthermore, "when a plaintiff has a choice between federal and state law claims, she may proceed in state court on the *exclusive* basis of state law, thus defeating the defendant's opportunity to remove." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001) (citation omitted). As the Supreme Court has recognized, "the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 F.3d at 392. Nevertheless, even where not pled,

4

two circumstances may provide for federal jurisdiction: (1) "when Congress expressly so provides"; and (2) "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Mitchell*, 982 F.3d at 940.

### B. The Outer Continental Shelf Lands Act ("OCSLA")

The purpose of OCSLA is "to allocate to the federal government jurisdiction, control, and power of disposition over the subsoil and seabed of the Outer Continental Shelf." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013) (quoting 43 U.S.C. § 1332(1)) (internal quotation marks omitted). "The term 'outer Continental Shelf' means all submerged lands lying seaward and outside of the area of lands beneath navigable waters as defined in section 1301 of this title." 43 U.S.C. § 1331(a). "Lands beneath navigable waters" refers to "all lands permanently or periodically covered by tidal waters up to but not above the line of mean high tide and seaward to a line three geographical miles distant from the coast line of each such State." 43 U.S.C. § 1301(a)(2).

Fifth Circuit courts assess jurisdiction under the OSCLA by analyzing "whether (1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation." *In re Deep Horizon*, 745 F.3d 157, 163 (5th Cir. 2014)

5

(quoting *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994)); *see also* 43 U.S.C. § 1349(b)(1). To determine whether a case arises under OCSLA, the Fifth Circuit applies a but-for test, asking whether the plaintiff's injuries or claims would have arisen but for the outer Continental Shelf ("OCS") operation. *Deep Horizon*, 745 F.3d at 163-64; *see also Barker*, 713 F.3d at 213 (applying a but-for test asking whether "(1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment"); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 747 F. Supp. 2d 704, 708 (E.D. La. 2010). The Fifth Circuit interprets OCSLA's jurisdictional grant as "straightforward and broad." *See Deepwater Horizon*, 745 F.3d at 163. Furthermore, "because jurisdiction is invested in the district courts by this statute, a plaintiff does not need to expressly invoke OCSLA for it to apply." *Id.* (citations omitted).

  **C. Entitlement to Federal Jurisdiction Under the OSCLA**

    **1. Whether the Activities that Caused the Injury Constituted an Operation Conducted on the OCS That Involved the Exploration and Production of Minerals**

To evaluate the first prong of the OSCLA federal jurisdiction analysis, a court addresses whether the activities at issue relate to oil and gas exploration, production, and transportation operations, and whether these activities constitute an operation

6

conducted on the OCS. *See, e.g.*, *Parish v. Exxon Mobile Corp.*, No. 13-6717, 2015 WL 4097111, at *15 (E.D. La. July 7, 2015). The term "operation" is not defined in the OSCLA. *See EP Operating*, 26 F.3d at 567. However, the Fifth Circuit defines the term as "the doing of some physical act." *Id.* (citing *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1207 (5th Cir. 1994)). Activities involving "the exploration and production of minerals" encompass "the full range of oil and gas activity from locating mineral resources through the construction, operation, servicing and maintenance of facilities to produce those resources." *Id.* at 568.

Plaintiff's testimony indicates that his work included activities related to oil and gas exploration and production. *See* Rec. Doc. 40-2 at 37. In plaintiff's deposition, he admits to working on offshore platforms while performing gasket work. *Id.* This work included "removal of gaskets and replacement of gaskets on head gaskets for compressors located on offshore platforms." *Id.* at 34. Removing and replacing gaskets on offshore platforms encompasses "the exploration and production of minerals" because it constitutes the "servicing and maintenance of facilities to produce those resources." *See EP Operating*, 26 F.3d at 568.

Additionally, plaintiff's activities were conducted on the OCS. *See* Rec. Doc. 40-2 at 37. When asked whether he worked "on platforms greater than three miles offshore performing gasket work," plaintiff testified, "I guess I did, yes." *Id*. Plaintiff

also confirmed that sometimes he "worked on platforms 100 miles offshore performing gasket work." *Id.* at 35. These facilities were on the OCS because "[t]he Outer Continental Shelf consists of the seabed and natural resources underlying the coastal waters greater than three geographical miles from the coastline," and plaintiff admits that some of the platforms he worked on were that far from the coastline. *See Barker*, 713 F.3d at 213 n.3 (citing 43 U.S.C. §§ 1301(a), 1331(a)); Rec. Doc. 40-2 at 35-37.

In plaintiff's motion, he suggests that "Exxon has not established that Hugh Taylor even worked on the Outer Continental Shelf." Rec. Doc. 29-1 at 2. Plaintiff argues that "[t]he testimony Exxon cites from Mr. Taylor does not establish that the work was three miles offshore." *Id.* at 2-3. As plaintiff's testimony states clearly that he worked three miles offshore, and sometimes even up to 100 miles offshore, the Court finds no basis for plaintiff's assertions. *See* Rec. Doc. 40-2 at 34-37.[1] Accordingly, defendant has at least provided evidence that plaintiff's work, "constituted an operation conducted on the outer Continental Shelf that involved the exploration and production of minerals." *See* 43 U.S.C. § 1349.

### 2. Whether the Case Arises Out of, or in Connection with, OCS Operations

The Court applies a but-for test to determine whether plaintiff's case "arises out of, or in connection with" the OCS

---

[1] Plaintiff does not seem to contest that plaintiff's work involved the exploration and production of minerals. *See* Rec. Doc. 29-1 at 2-3.

operations. *See Deep Horizon*, 745 F.3d at 163 (acknowledging that a "but-for" test is required to determine whether a case arises out of, or in connection with, OCS operations). Meaning, but for the OCS operation, would the plaintiff's claims and injuries have arisen. *See id.* at 163-64. Here, the parties contest whether plaintiff's injuries would have occurred but for the OCS operations. *See generally*, Rec. Docs. 29-1, 40, 47.

Plaintiff maintains that he has "not alleged any [asbestos] exposure whatsoever on the Outer Continental Shelf," and consequently, his work on OCS platforms was not a but for cause of his injuries. *See* Rec. Doc. 29-1 at 3, 5. In the complaint, plaintiff alleges that he "was exposed to asbestos during the routine course of his work." Rec. Doc. 1-1 at 4. Plaintiff claims that "[a]s a result of these exposures to asbestos, [he] contracted asbestosis and other ill health effects related thereto." *Id.* Later in the complaint, plaintiff states he "worked with and around other workers handling asbestos products" and "had to handle these products himself" at over twenty different facilities, which are listed in the complaint. *Id.* at 26-27. Plaintiff's complaint does not specify whether he was exposed to asbestos in the facilities' offshore operations. *See id.* Defendant even admits in its notice of removal that "Plaintiff's Petition did not contain any allegations that his alleged injuries and claims against Defendants arose out of, or were in connection with, Defendants'

9

operations on the Outer Continental Shelf." Rec. Doc. 1 at 5. Thus, in plaintiff's petition, he does not plainly allege he was exposed to asbestos on the OCS.

Nevertheless, defendant claims plaintiff's petition reveals the asbestos exposure was not limited to onshore work. *See* Rec. Doc. 40 at 12. Defendant relies on *Sheppard v. Liberty Mutual Insurance Company*, to assert that because plaintiff testified to working offshore and plaintiff's complaint generally states that plaintiff "was exposed to asbestos during the routine course of his work" and "makes no distinctions between his offshore and his work in industrial facilities," then plaintiff was exposed to asbestos through his offshore work. *Id.* (citing No. 16-2401, 2016 WL 6803530, at *5 (E.D. La. Nov. 17, 2016)). Furthering the same point, defendant adds that plaintiff's OCS work duties were equal to his non-OCS ones. *Id.* However, in equating the instant matter to *Sheppard*, defendant ignores key differences between the two cases.

In *Sheppard*, the court found that "Sheppard's [complaint] plainly alleges that Sheppard was exposed to asbestos while working at the Freeport's Caminada facility." 2016 WL 6803530, at *2. Indeed, the complaint stated that the plaintiff was "employed by and on the premises of Freeport's . . . *Caminada Facility*, as well as various other drilling rigs. On a daily basis during this employment, he was exposed to dangerously high levels of asbestos

10

in the normal routine course of his work." *Id.* The Caminada Facility is located on the OCS. *Id.* Because the plaintiff had "plainly allege[d]" that he was exposed to asbestos at an offshore facility, the Court found that "a portion of his exposure occurred" on the OCS, and therefore, OCSLA applied. *Id.* at *2-3.

Here, however, plaintiff does not make the same explicit allegation. *See* Rec. Doc. 1-1 at 1-36. Plaintiff generally alleges that he "was exposed to asbestos during the routine course of his work" and admits in deposition that he worked at some facilities on the OCS. Rec. Doc. 1-1 at 4; Rec. Doc. 40-2 at 34-37. But in his complaint, plaintiff does not seem to list an OCS facility as one of the workplaces he was exposed to asbestos, like the plaintiff does in *Sheppard*. *Compare* Rec. Doc. 1-1 at 4, *with* 2016 WL 6803530, at *2. It is not apparent that any of the facilities listed in plaintiff's complaint are solely offshore and neither party seems to claim as much. *See* Rec. Doc. 1-1 at 26-27; Rec. Doc. 1 at 5; *see generally* Rec. Docs. 29-1, 40, 47. Consequently, plaintiff's petition does not demonstrate that plaintiff's work on OCS platforms was a but for cause of his injuries. *Cf. Lopez v. McDermott, Inc.*, No. 17-8977, 2018 WL 52581, at *3 (E.D. La. Jan. 24, 2018) (denying plaintiff's motion to remand in part because the plaintiff, unlike here, plainly stated "that the instant suit arises out of asbestos exposures he received on land and on offshore drilling platforms" and that "Plaintiff was exposed to

11

asbestos in the course of building or repairing platforms" (cleaned up)).[2]

Regardless of whether plaintiff plainly alleged exposure to asbestos at an OCS operation in his petition, if plaintiff's testimony indicates OCS exposure, federal jurisdiction under OCSLA can still be applicable. *See Lopez*, 2018 WL 525851, at *1, 3. Defendant maintains that plaintiff's testimony does just that, and consequently, federal jurisdiction under OCSLA applies here. *See* Rec. Doc. 40 at 12-16. Specifically, defendant argues plaintiff must have been exposed to asbestos on the OCS platforms because plaintiff testified that there, he performed the exact same work that he did onshore. *See id.* at 12. Thus, if plaintiff was exposed to asbestos onshore, the same is true for offshore. *See id.* at 12-

---

[2] Defendant argues that "the fact that Plaintiff failed to set forth allegations of exposure from his work on the OCS or to assert federal claims has no bearing on the proper exercise of this Court's jurisdiction under the OCSLA." Rec. Doc. 40 at 19. In doing so, defendant equates a failure to set forth allegations of exposure from his work on the OCS with a failure to assert federal claims under the OCSLA. *See id.* However, the former can bear on this Court's jurisdiction, whereas the latter does not. Indeed, "[a] plaintiff does not need to expressly invoke OCSLA in order for it to apply." *Barker*, 713 F.3d at 213. Meaning, if plaintiff alleged or testified to an injury related to his work on the OCS, but never invoked OCSLA, a federal court would still have jurisdiction over that claim. *See Hammond v. Phillips 66 Co.*, No. 2:14cv119-KS-MTP, 2015 WL 630918, at *3-4 (S.D. Miss. Feb. 12, 2015) (acknowledging that federal jurisdiction under OCSLA is not determined by whether the plaintiff only seeks claims under state law). Nevertheless, whether plaintiff alleges or testifies to exposure from his work on the OCS can be a factor, although not necessarily a dispositive one, in determining if there is a "but-for connection" between plaintiff's claims and OCS operations. *See Sheppard*, 2016 WL 6803530, at *3-4 (using the plaintiff's allegations that he "was exposed to asbestos while working" on the OCS as a factor determining satisfaction of the "but-for causation requirement"); *Lopez*, 2018 WL 525851, at *3 (using plaintiff's testimony that the plaintiff "was exposed to asbestos in the course of building or repairing platforms" as a factor determining same).

16. To support this argument, defendant again claims this case is identical to *Sheppard*. *Id.*

In *Sheppard*, the court relies on the plaintiff's statements that his job duties did not change when working offshore to find that the plaintiff's deposition rejecting any OCS asbestos exposure was "nebulous" and "insufficient to overcome the clear allegations in his pleadings that a portion of his exposure occurred at" an OCS facility. 2016 WL 6803530, at *3. The plaintiff in *Sheppard* testified that at the OCS facility, "he still worked with insulation" and "that he doesn't know the difference between asbestos and non-asbestos insulation, and cannot tell whether insulation has asbestos in it by looking at it." *Id.*

Here, plaintiff does admit the process of performing gasket work offshore was "[t]he same way you do onshore." Rec. Doc. 40-2 at 36. However, unlike in *Sheppard* where the plaintiff could not tell the difference between types of insulation, plaintiff here can distinguish between the gaskets used in his work. *See id.* at 22; 2016 WL 6803530, at *3. When asked who manufactured the gasket materials that plaintiff worked with, he replied "Garlock 900." Rec. Doc. 40-2 at 22. Plaintiff stated that he did not think there was anything "distinctive about a Garlock 900 gasket," but he knew when it was a Garlock 900 gasket because "It's wrote on there. It's stamped on it." *Id.* Thus, that plaintiff performed the same work onshore and offshore does not necessarily indicate that

13

plaintiff was exposed to asbestos in both locales, as defendant suggests. *See* Rec. Doc. 40 at 12-17. When plaintiff can discern between materials used in his work, then the inquiry becomes not whether the work performed was identical onshore and off, but instead, whether the materials used offshore also could have exposed plaintiff to asbestos. The work is not the same in both locales if the materials are distinguishable. *Cf. Sheppard*, 2016 WL 6803530, at *3 (finding the same job duties when work materials were interchangeable).

Plaintiff suggests that the Garlock 900 gaskets exposed him to asbestos through the course of his work. *See* Rec. Doc. 29-1 at 4 (calling the Garlock 900 gaskets "Garlock asbestos gaskets"); Rec. Doc. 40-2 at 22 (testifying that Garlock 900 manufactured the gasket materials plaintiff used while working at one of the facilities he alleges exposed him to asbestos). He insists, however, that "Garlock 900 gaskets were not used on offshore oil and gas rigs." Rec. Doc. 47 at 2. When questioned on whether plaintiff's work on offshore platforms in the Gulf of Mexico involved removal and replacement of Garlock 900 gaskets, plaintiff responded "[i]t did not." Rec. Doc. 47-1 at 2. Similarly, when defendant asks "are you telling me that there's not a single gasket job that you performed offshore that involved asbestos gaskets," plaintiff replies "I can't say that I ever did." *Id.* Additionally, in his deposition, plaintiff states "I wasn't exposed to no

14

asbestos at all offshore." Rec. Doc. 40-2 at 31. Accordingly, plaintiff's testimony does not yet indicate that he could have been exposed to asbestos offshore, and thus, that but for plaintiff's work on OCS operations, plaintiff's case or controversy would not have arisen.

Nevertheless, defendant argues that "Plaintiff's testimony does not foreclose the possibility that the gaskets he worked with were asbestos-containing because, aside from Garlock 900, there were many other asbestos-containing gaskets that existed during that time frame." Rec. Doc. 40 at 16-17. Defendant's assertion is unsupported, but even if we assume that other asbestos-containing gaskets existed during the relevant time frame, defendant provides no information, through plaintiff's testimony or otherwise, suggesting those gaskets were present on the OCS facilities during plaintiff's tenure. Defendant claims that "Plaintiff improperly seeks to impose a heightened burden on Defendant to affirmatively prove that Plaintiff was, in fact, exposed to asbestos on the OCS" which according to *Sheppard*, "would put defendants in the absurd position of being able to prove plaintiff's case as a prerequisite to asserting federal jurisdiction." *Id.* at 18 (quoting *Sheppard*, 2016 WL 6803530, at *3). Plaintiff, however, does not endeavor to do so here.

Indeed, the statutory grant of subject matter jurisdiction over controversies "arising out of or in connection with"

15

operations involving resource exploitation on the OCS is straightforward and broad. *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 215 (5th Cir. 2016). However, there must be some allegation or testimony linking a plaintiff's claim or injury to the OCS. *See Deepwater Horizon*, 745 F.3d at 163-64 (requiring a "but for connection" to find jurisdiction under OCSLA). Here, plaintiff disputes that he was exposed to asbestos on the OCS. Rec. Doc. 47-1 at 2; Rec. Doc. 40-2 at 31. As defendant suggests, for federal jurisdiction to apply under OCSLA, defendant would not need to prove that plaintiff was indeed exposed to asbestos on the OCS or that any OCS exposure actually caused plaintiff's asbestosis and alleged other ailments. *See Sheppard*, 2016 WL 6803530, at *3. But to invoke OCSLA here, defendant does need to provide a basis for claiming that plaintiff's injuries or exposure to asbestos "arose out of, or in connection with," plaintiff's work on the OCS. *See Ronquille v. Aminoil, Inc.*, No. 14-164, 2014 WL 4387337, at *2 (E.D. La. Sept. 4, 2014) (denying motion to remand in part because "it appears that at least part of the work that Plaintiff alleges caused his exposure to asbestos arose out of or in connection with Shell's OCS operations").

All defendant provides is an uncited claim that even if plaintiff did not work with Garlock 900 gaskets offshore, it is possible he worked with other asbestos-containing gaskets because "there were many other asbestos-containing gaskets that existed

16

during that time frame." *See* Rec. Doc. 40 at 16-17. Absent in this record is some indication that those unidentified asbestos-containing gaskets were on the offshore platforms at the same time plaintiff was working. When plaintiff's petition does "not contain any allegations that his alleged injuries and claims against Defendants arose out of, or were in connection with, Defendants' operations on the [OCS]," and plaintiff testifies that he was not exposed to asbestos offshore and can distinguish between a gasket that exposed him to asbestos and other gaskets, then defendant must provide some information demonstrating plaintiff could have been exposed to asbestos through his work on the OCS. *See* Rec. Doc. 1 at 5. Defendant's uncited statement suggesting "many asbestos-containing gaskets . . . existed during that time frame" does not provide that showing.[3] Accordingly, defendant does not meet its burden of showing that plaintiff's case "arises out of, or in connection with" the OCS operations.[4]

New Orleans, Louisiana this 25th day of July, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] Both parties also discuss whether a minimal exposure to asbestos offshore compared to onshore can still indicate that "the plaintiff's injury would not have occurred but for his employment" offshore. *Barker*, 713 F.3d at 213; *see also* Rec. Doc. 40 (citing *Sheppard*, 2016 WL 6803530, at *3); Rec. Doc. 29-1 (citing *Hammond*, 2015 WL 630918, at *3-4). Because we find plaintiff's allegations and testimony do not indicate plaintiff might have been exposed to asbestos on the OCS, we need not address this issue.

[4] Plaintiff also argues that in the alternative, the instant matter should be remanded pursuant to 28 U.S.C. § 1367(c). Rec. Doc. 29-1 at 7-12. The Court does not address this argument as we find removal here was improper under OCSLA.